UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| JEFFREY DEANGELIS,<br>    Plaintiff, | :<br>:<br>: |
| v. | : Case No. 3:16cv674(MPS) |
| WARDEN SANTIAGO, ET AL.,<br>    Defendants. | :<br>:<br>: |

## **INITIAL REVIEW ORDER**

The plaintiff, Jeffrey DeAngelis, is incarcerated at the MacDougall-Walker Correctional Institution in Suffield, Connecticut.  He has filed a complaint naming Warden Antonio Santiago, Deputy Warden Martin, Commissioner Scott Semple, Correctional Officers Murphy and Colby, Intelligence Officer Lamotte, Property Officers Muckle and Kudzal, Administrative Remedy Coordinators Michelle King and Kimberly Daly, Lieutenant Field and Statewide Property Liaison Rivera as defendants.  For the reasons set forth below, the complaint is dismissed in part.

**I. Legal Standard**

Pursuant to 28 U.S.C. § 1915A(b), the Court must review prisoner civil complaints against governmental actors and "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.*  Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). Although courts still have an obligation to interpret "a *pro se* complaint liberally," the complaint must include sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

## II. Plaintiff's Allegations

The plaintiff claims that on December 29, 2015 at Corrigan-Radgowski Correctional Institution ("Corrigan-Radgowski"), Correctional Officers Murphy and Colby entered his cell and began to search it. The plaintiff complained about Officer Murphy chewing tobacco and spitting it out in his cell. During the search, Officer Murphy found a cup of liquid that smelled like it contained an alcoholic substance. The plaintiff allegedly admitted to Lieutenant Field that the cup of liquid belonged to him. Prison officials issued the plaintiff a disciplinary report for possessing an intoxicating substance. Lieutenant Field placed the plaintiff in a cell in the restrictive housing unit. Prison officials released the plaintiff from the restrictive housing unit on January 2, 2016.

Upon his release, the plaintiff did not receive any of the personal property that had been in his cell prior to the search and his transfer to the restrictive housing unit. Administrative Remedy Coordinator King refused to permit the plaintiff to go to the property room to retrieve his personal property.

On January 4, 2016, Intelligence Officer Lamotte issued the plaintiff another disciplinary report for contraband allegedly found in his cell on December 29, 2015. The plaintiff claims that this additional report violated Department of Correction Administrative Directives that prohibited multiple disciplinary reports for the same offense arising out of the same incident. The plaintiff alleges that Intelligence Officer Lamotte "maliciously changed the date of the ticket to January 4, 2016," and told the plaintiff to "stop messing with our dip," referring to the plaintiff's repeated complaints about the use of tobacco by staff. (ECF No. 1 at 7.) Prison officials found the plaintiff guilty of the offense and sanctioned him to ten days of risk reduction earned credits. Prison officials released the plaintiff from the restrictive housing unit on January 8, 2016.

The plaintiff claims that on December 29, 2015, Intelligence Officer Lamotte removed his personal property from his cell and did not inventory it. Lieutenant Field incorrectly listed another officer as having packed and inventoried the plaintiff's property. On January 8, 2016, the plaintiff went to retrieve his property from the property room. Property Officer Kudzal informed the plaintiff that his Nike sneakers had been confiscated because they cost more than $100.00. Property Officer Kudzal provided the plaintiff with a receipt indicating that he had thirty days to arrange to send his sneakers out of the facility or to have them picked up. The plaintiff informed Property Officer Kudzal that he had been permitted to possess the Nike sneakers pursuant to a decision made by Commissioner Semple and that he had a receipt indicating the sneakers only cost $89.90.

After reviewing the items of property provided to him by Property Officer Kudzal, the plaintiff noticed that his Nintendo machine, 5 games, his headphones and all of his clothing were missing. Property Officer Kudzal informed the plaintiff that he did not know who had packed

3

his property and Property Officer Muckle had not prepared an inventory of the property when it was delivered to the property room.  Officer Kudzal did find an inventory of the plaintiff's property from November 20, 2015.

The plaintiff claims that he wrote to Warden Santiago and Deputy Warden Martin on December 29, 2015, regarding the use of chewing tobacco by officers at Corrigan-Radgowski and the fact that he had been recording dates and times when officers had used chewing tobacco. The plaintiff contends that inmates would take the discarded chewing tobacco from trash cans in the prison facility, dry it out and then smoke it.  The plaintiff asserts that he has been exposed to tobacco smoke when it came through the vents into his cell and housing unit.  The plaintiff claims that the defendants had confiscated his sneakers in retaliation for the grievances that he had filed about tobacco use by correctional staff.

On February 2, 2016, Commissioner Semple directed Warden Santiago to return the plaintiff's Nike sneakers to him because they were part of a settlement agreement.  Deputy Warden Martin later informed the plaintiff that his sneakers would not be returned to him.

On February 5, 2016, Property Officer Muckle provided the plaintiff with a memorandum indicating that the sneakers would not be returned to him because they had been altered and informing the plaintiff that he had thirty days to mail them out of the facility or to have them picked up at the facility.  Deputy Warden Martin signed off on this memorandum.

On February 8, 2016, Administrative Remedy Coordinator King assisted the plaintiff in completing paperwork to send the sneakers to Commissioner Semple in order to disprove the allegation that he had altered the sneakers.   In early March 2016, the plaintiff sent letters to Administrative Remedy Coordinator King and Warden Santiago regarding his request to have his

4

sneakers mailed to Commissioner Semple.  On March 7, 2016, Warden Santiago denied the plaintiff's request to send the sneakers to Commissioner Semple.

The plaintiff filed a grievance regarding the confiscation of his sneakers.  On February 15, 2016, Administrative Remedy Coordinator Daly returned the grievance and instructed the plaintiff to file a claim with the lost property board.  The plaintiff submitted a lost property investigation form regarding his sneakers on February 16, 2016.   On March 7, 2016, the plaintiff submitted a lost property investigation form regarding his Nintendo machine, games, headphones, and clothing. On March 8, 2016, the plaintiff learned from Statewide Property Liaison Rivera that officials had disposed of his sneakers because the thirty day deadline for either sending them out of prison or having someone pick them up had expired.

On March 14, 2016, the plaintiff filed a lost property investigation form regarding his sneakers with Administrative Remedy Coordinator King.   She allegedly failed to process the form.

On March 20, 2016, the plaintiff submitted another lost property investigation form regarding his Nintendo machine, games, headphones, and clothing.  The plaintiff has not received a response to the filing of this form.

For relief, the plaintiff seeks monetary damages as well as injunctive relief.  Specifically, the plaintiff seeks an order banning the use of all tobacco products in any correctional facility, that he be transferred to another prison facility, and that his property be returned to him.

### III. Discussion

#### A.     Property Claims

The plaintiff alleges that the defendants deprived him of his personal property in

violation of his constitutional rights under the Fifth and Fourteenth Amendments.  The Supreme Court has found that the Due Process Clause of the Fourteenth Amendment is not violated when a prison inmate loses personal belongings due to the negligent or intentional actions of correctional officers if the state provides an adequate post-deprivation compensatory remedy. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 543 (1981).  The holding in *Hudson* is also applicable to claims that the defendants deprived an inmate of his or her property without due process of law in violation of the Fifth Amendment.  *See Crum v. Dupell*, No. 9:06-CV-512 (FJS/GJD), 2008 WL 902177, at *4 (N.D.N.Y. Mar. 31, 2008) (citing cases).

The State of Connecticut provides an adequate remedy for the kind of deprivation the plaintiff alleges.  *See* State of Connecticut Department of Correction Administrative Directive 9.6(16) (Aug. 15, 2013) (providing Department of Correction's "Lost Property Board shall hear and determine any claim by an inmate in a correctional facility who seeks compensation not to exceed . . . ($3,500.00) for lost or damaged personal property" and that inmate may pursue his property claim with the Connecticut Claims Commissioner if the Board denies the claim completely or in part); (Conn. Gen. Stat. § 4-141 *et seq*. (providing that claims for payment or refund of money by the state may be presented to the Connecticut Claims Commission); *see also, e.g.*, *S. v. Webb*, 602 F. Supp. 2d 374, 386 (D. Conn. 2009) (finding Connecticut has sufficient post-deprivation remedies for seizures of property by state officials).  This state remedy is not rendered inadequate simply because plaintiff anticipates a more favorable remedy in federal court or it may take a longer time under the state system before his case is resolved.  *See Hudson*, 468 U.S. at 535.

The plaintiff alleges that he submitted multiple lost property forms in February and March 2016 regarding his sneakers and his missing Nintendo machine, games, headphones, and clothing pursuant to State of Connecticut Department of Correction Administrative Directive 9.6(16)B.  The plaintiff states that he did not receive a response from the Lost Property Board after he submitted the forms.  Administrative Directive 9.16 does not require the Lost Property Board to provide a receipt or confirmation notice when a claim is filed.  Furthermore, the Lost Property Board is permitted up to one year from the date of receipt of an inmate's lost property claim to render a decision.  In addition, the year limit may be extended for good cause shown.  *See id.* at 9.16(16)E.  The plaintiff's complaint was filed on May 2, 2016.  Thus, the time for processing the plaintiff's lost property claims had not expired at the time the plaintiff filed this action.

The plaintiff has not alleged that the Department of Correction's procedures for processing property claims are inadequate.  *See Edwards v. Erfe*, 588 F. App'x 79, 80-81 (2d Cir. 2015) (affirming dismissal of inmate's deprivation of property claim on the ground that the inmate had not alleged that process provided by the State of Connecticut, including the opportunity to seek relief through the Office of the Claims Commissioner, was inadequate).  The property claims against the defendants are dismissed for failure to state a claim upon which relief may be granted.  *See* 28 U.S.C. § 1915A(b)(1).

### B. Retaliation Claims

The plaintiff alleges that the defendants retaliated against him for filing grievances about correctional staff tobacco use by confiscating his sneakers and losing other items of personal property.  The plaintiff also asserts that Intelligence Officer Lamotte issued him a false

disciplinary report in retaliation for his complaints about staff using chewing tobacco. The Second Circuit has "instructed district courts to 'approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.'" *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (quoting *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003)). Such claims must be "'supported by specific and detailed factual allegations,' not stated 'in wholly conclusory terms.'" *Id.* (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). To state a First Amendment retaliation claim, the plaintiff must show "(1) that the speech or conduct at issue was protected [by the Constitution or federal law], (2) that the defendant took adverse action against . . . [him], and (3) that there was a causal connection between the protected speech and the adverse action." *Id.* at 294 (internal quotation marks and citation omitted).

The Second Circuit has repeatedly held that submitting a grievance to prison officials constitutes conduct that is protected by the Constitution. *See Davis v. Goord*, 320 F.3d 346, 352-53 (2d Cir. 2003); *Graham v. R.J. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996). Although the plaintiff alleges that he filed grievances with Warden Santiago and Deputy Warden Martin on the day of his cell search regarding the use of tobacco by correctional staff, he has not made detailed factual allegations showing the necessary causation between the filing of the grievances and the alleged confiscation of his sneakers and loss of the other items of his personal property. There are no facts to suggest that defendants Santiago, Martin, Semple, Murphy, Colby, Muckle, Kudzan, King, Daly, Field or Rivera confiscated his sneakers or misplaced his other property in

8

retaliation for his filing grievances about tobacco use. Thus, this allegation of retaliatory conduct on the part of the defendants fails to state a plausible claim under the First Amendment and is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

The retaliation claim against Intelligence Officer Lamotte, however, stands on a different footing. The plaintiff alleges that on December 29, 2015, Intelligence Officer Lamotte was responsible for removing all of his personal property from his cell and failing to inventory it. In addition, he issued the plaintiff a disciplinary report on January 4, 2016 charging the plaintiff with possessing additional contraband that had been found in his cell on December 29, 2015. The plaintiff claims that at the time he issued the disciplinary report, Officer Lamotte warned the plaintiff to "stop messing with our dip." Compl. at 7. The plaintiff contends that in retaliation for the grievances that he had submitted regarding tobacco use by prison staff, Officer Lamotte was responsible for losing or confiscating his Nintendo machine, games, headphones, and clothing and issuing him a false disciplinary report for possession of contraband. The court concludes that these more detailed allegations state a plausible claim of retaliation and will proceed.

### C. Grievance Procedures

The plaintiff alleges that the defendants violated his First Amendment rights because they made it difficult or impossible for him to file grievances. It is well-established that "[i]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim." *Shell v. Brzesniak*, 365 F. Supp. 2d 362, 370 (W.D.N.Y. 2005). In addition, "prisoners do not have a due process right to a thorough investigation of grievances." *Tafari v.*

9

*McCarthy*, 714 F. Supp. 2d 317, 347 (N.D.N.Y.2010) (citing *Torres v. Mazzuca*, 246 F. Supp. 2d 334, 341-42 (S.D.N.Y.2003) ( "The corrections officers' failure to properly address [plaintiff's] grievances by conducting a thorough investigation to his satisfaction does not create a cause of action for denial of due process because [plaintiff] was not deprived of a protected liberty interest.")).

The plaintiff states that he filed grievances about his lost/confiscated property and on one occasion Administrative Remedy Coordinator Daly returned a grievance and directed him to file a claim with the Lost Property Board. Thus, Coordinator Daly did not prevent the plaintiff from seeking redress for his complaints within the Department of Correction. Nor are there any other allegations that conduct by other defendants prevented the plaintiff from asserting and pursuing grievances or his claims in this action. The court concludes that the claims against the defendants with regard to their alleged attempts to prevent him from filing grievances do not rise to the level of a constitutional violation and are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### D. Conspiracy Claims

The plaintiff generally asserts that the defendants conspired to confiscate his sneakers. To state a claim for conspiracy under section 1983, the plaintiff must allege facts showing an agreement between two or more state actors to act in concert to inflict an unconstitutional injury on plaintiff and an overt act done in furtherance of the conspiracy that causes damages. *See Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). The Second Circuit has consistently held that a claim of conspiracy to violate civil rights requires more than general allegations. "[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly

10

dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) (quoting *Dwares v. City of N.Y.*, 985 F.2d 94, 100 (2d Cir. 1993) (citations, internal quotation marks, and internal alterations omitted)).

The plaintiff has asserted no facts from which the court could infer the existence of a conspiracy by the defendants to confiscate his sneakers. The conspiracy allegation is conclusory, at best. Accordingly, the plaintiff has not asserted a plausible conspiracy claim against the defendants and the claim is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### E.     Due Process Claim

The plaintiff claims that on January 4, 2016, Officer Lamotte issued him a disciplinary report for contraband allegedly found in his cell on December 29, 2015. He claims that the charge was false and violated Department of Correction Administrative Directives. Prison officials found the plaintiff guilty of the offense and sanctioned him to ten days of risk reduction earned credits.

To state a claim for violation of procedural due process in connection with his placement in segregation, the plaintiff must show that he had a protected liberty interest and, if he had such an interest, that he was deprived of that interest without being afforded due process of law. *See Sandin v. Conner,* 515 U.S. 472 (1995). He has a protected liberty interest only if the state created a liberty interest in a statute or regulation and the deprivation of that interest caused him to suffer an atypical and significant hardship. *See Tellier v. Fields*, 280 F.3d 69, 81 (2d Cir. 2000).

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that when a state

11

prisoner seeks damages in a section 1983 action, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487. In *Edwards v. Balisok*, 520 U.S. 641 (1997), the Supreme Court concluded that the holding of *Heck* applies to a prisoner's challenge to the procedures used in a disciplinary proceeding which results in a change to the prisoner's sentence, including the loss of accumulated good-time credits. *See id.* at 648. Thus, a prisoner may not proceed with a section 1983 action challenging sanctions imposed pursuant to a disciplinary finding "unless he has shown that the sanction . . . ha[s] been overturned through administrative channels or by a state or federal court." *Peralta v. Vasquez*, 467 F.3d 98, 100 (2d Cir. 2006), *cert. denied*, 551 U.S. 1145 (2007).

Here, the plaintiff alleges that he received a sanction of ten days loss of risk reduction earned credits. The loss of risk reduction earned credit is a sanction that affects the duration of the plaintiff's confinement. *See* State of Connecticut Department of Correction Administrative Directive 4.2A(4), available at www.ct.gov/dos/LIB/doc/PDF/AD/ad0402a.pdf ("RREC could affect an inmate's discharge date by five (5) days a month if in compliance.").

The plaintiff seeks monetary damages for the alleged deprivation of his due process rights. Any decision that the defendants violated the plaintiff's due process rights during the disciplinary hearing would necessarily imply that the sanction of a loss of risk reduction earned credits was invalid. The plaintiff has not alleged that he has challenged the loss of risk reduction earned credit in a state habeas or other proceeding or that this sanction has been overturned or vacated. The due process claim with regard to the loss of risk reduction earned credits is

therefore dismissed without prejudice.  *See* 28 U.S.C. § 1915A(b)(1).

### F. Eighth Amendment Claim

The plaintiff alleges that inmates have been drying the chewing tobacco discarded by correctional staff and smoking it.  He alleges that he complained about breathing in tobacco smoke to Warden Santiago and Deputy Warden Martin on December 29, 2015, but they failed to take action to remedy the situation.  The court concludes these allegations state an Eighth Amendment claim.  *See Helling v. McKinney*, 509 U.S. 25, 35 (1993) (prisoner may state Eighth Amendment claim by "alleging that [prison officials] have, with deliberate indifference, exposed him to levels of [environmental tobacco smoke] that pose an unreasonable risk of serious damage to his future health").  The Eighth Amendment claim will proceed against defendants Santiago and Martin.

## ORDERS

The Court enters the following orders:

(**1**)     The First Amendment retaliation claim will proceed against Intelligence Officer Lamotte in his individual and official capacities and the Eighth Amendment second-hand smoke claim will proceed against Warden Santiago and Deputy Warden Martin in their individual and official capacities. All other claims are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).

(2)     **Within twenty-one (21) days of this Order**, the U.S. Marshals Service shall serve the summons, a copy of the complaint and this order on defendants Santiago, Martin and Lamotte in their official capacities by delivering the necessary documents in person to the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141.

(3) **Within twenty-one (21) days of this Order**, the Clerk shall ascertain from the Department of Correction Office of Legal Affairs the current work addresses for Warden Antonio Santiago, Deputy Warden Martin and Correctional Officer Lamotte and mail a waiver of service of process request packet to each defendant in his individual capacity at his current work address. On the thirty-fifth (35th) day after mailing, the Clerk shall report to the court on the status of all the requests. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(4) Defendants shall file their response to the complaint, either an answer or motion to dismiss, **within sixty (60)** days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(5) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed **within six months (180 days)** from the date of this order. Discovery requests need not be filed with the court.

(6) All motions for summary judgment shall be filed **within seven months (210 days)** from the date of this order.

SO ORDERED at Hartford, Connecticut this 23rd day of August, 2016.

/s/
Michael P. Shea
United States District Judge